CHRISTOPHER S. PORRINO
Acting Attorney General of New Jersey
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, New Jersey 08625-0093
Attorney for New Jersey Department of
    Environmental Protection

By: Kevin J. Fleming (ID 026932009)
    Robert J. Kinney (ID 038572005)
    Deputy Attorneys General
    (609) 292-1557

UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF
NEW JERSEY

| | |
|---|---|
| In Re: | CHAPTER 11 |
| STRATEGIC ENVIRONMENTAL PARTNERS, LLC, | CASE NOS: 16-22151-CMG and 16-22153-CMG |
| Debtor<br>CASE NO: 16-22151-CMG | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE** |
| In Re: | |
| RICHARD BERNARDI AND MARILYN BERNARDI, et al. | |
| Debtors<br>CASE NO.: 16-22153-CMG | |

**PRELIMINARY STATEMENT**

The State of New Jersey, Department of Environmental Protection ("Department" or "DEP"), seeks an Order directing the appointment of a Chapter 11 Trustee, pursuant to 11 U.S.C. § 1104(a), (b) in regard to the Chapter 11 Petitions of Strategic Environmental Partners, LLC ("SEP") (Case No. 16-22151) and Richard

1

Bernardi and Marilyn Bernardi (Case No. 16-22153) (hereinafter, collectively the "Debtors") based upon the Debtors' historic misuse of corporate resources for personal gain, and the criminal indictment of Debtors Richard Bernardi and SEP pending in the Superior Court of New Jersey (Docket No. 16-02-00014-S) alleging false representation, theft by deception, financial facilitation of criminal activity, theft of services and misconduct by a corporate official.

A Chapter 11 Trustee should be appointed because the Debtors have demonstrably mismanaged and diverted millions of dollars in fees collected by them for the purpose of redeveloping the Fenimore Landfill in Roxbury Township, New Jersey (the "Landfill"). By the terms of an Administrative Consent Order and related Closure Plan ("ACO/CP") executed by the Debtors on October 6, 2011, Debtors agreed to place fees received by them to accept regulated, recycled materials ("tipping fees") into a closure/post-closure care escrow account. Certification of Deputy Attorney General Robert J. Kinney, Exhibit 1 ("Kinney Cert."). Debtors failed to do so, instead diverting monies that should have been placed into escrow into the personal accounts of SEP's president, Marilyn Bernardi, and of her children.

Because of Debtors' gross mismanagement of escrow monies, coupled with Debtors' overall mismanagement of the Landfill's redevelopment, the DEP has spent millions of tax dollars to abate

2

noxious hydrogen sulfide gas emissions from the Landfill. Additionally, the recent indictments of Debtors Richard Bernardi and SEP for matters related to Debtors' financial mismanagement reinforces the need for an independent Chapter 11 Trustee.

## STATEMENT OF FACTS

Debtors purchased the Fenimore Landfill in February 2010, with the goal of redeveloping the Landfill into a solar power generating array. Kinney Cert., Exhibit 1, ¶ 8. Debtor SEP secured a $950,000 mortgage on the property, personally guaranteed by Marilyn Bernardi. Kinney Cert., Exhibit 2. Debtors have since defaulted on that mortgage. Kinney Cert., Exhibit 3.

On October 6, 2011, Debtors entered into the ACO/CP with the DEP, whereby they agreed to a four-phase redevelopment plan. Kinney Cert., Exhibit 1, p. 1-1 of 1-10. As part of this plan, the DEP authorized the Debtors to accept regulated fill-material on the property, to bring up elevations on the Landfill so they would be suitable for installation of solar panels and related equipment. Id. at p.2, ¶ 8.

Debtors agreed to deposit tipping fee revenues from the fill-material into a closure/post-closure care escrow account from which Debtors could later draw for redevelopment purposes. Id., p.3, ¶ 13. Debtors were also required to file monthly reports with the DEP detailing tipping fee revenues. Id., p. 4, ¶ 15; p. 7, ¶ 24. Debtors eventually set up the required escrow account, but failed

3

todeposit any fee revenues into the account. Kinney Cert., Exhibit 4.

Although Debtors placed no monies in the escrow account, they did set up numerous corporate accounts for SEP in several financial institutions, including Wells Fargo Bank, N.A. ("Wells Fargo")[1], TD Bank, N.A. ("TD Bank"), and JP Morgan Chase Bank, N.A. ("Chase Bank"). Certification of Steven Hulse ("Hulse Cert."), Exhibits 1 - 4. As detailed below, bank statements obtained from these institutions by subpoena reveal a pattern and practice of moving deposits from one account to another, and into personal checking and savings accounts of Marilyn Bernardi, SEP's President and sole officer, and her children, Nicole Bernardi and Richard W. Bernardi, Jr.

**TD BANK ACCOUNTS HELD BY STRATEGIC ENVIRONMENTAL PARTNERS:**

XXXXXX2694
XXXXXX3435
XXXXXX4177
XXXXXX6057

**TD BANK ACCOUNTS HELD BY MARILYN BERNARDI**[2]

XXXXXX5224
XXXXXX8944
XXXXXX0908 (Marilyn Bernardi, In Trust For ("ITF") Nicole Bernardi)
XXXXXX1039 (Marilyn Bernardi, In Trust For ("ITF") Richard Bernardi, Jr.)

**TD BANK JOINT ACCOUNTS**

---

[1] Initial accounts were established in Wachovia Bank, which became Wells Fargo Bank in March, 2010, following a merger. The account numbers did not change.

[2] Debtor Richard Bernardi, Sr., has no accounts in his name in any of the financial institutions referenced herein.

4

XXXXXX4293 (Marilyn Bernardi and Nicole Bernardi)
XXXXXX4599 (Nicole Bernardi and Marilyn Bernardi)
XXXXXX4483 (Marilyn Bernardi and Richard Bernardi, Jr.)

A review of TD Bank statements for the above accounts reveals numerous transfers from SEP's corporate accounts to personal accounts of Marilyn Bernardi and/or her children. These transfers total $1,304,813.80:

1. $414,771.22 was transferred from SEP corporate account XXXXXX6057 to Marilyn Bernardi's account XXXXXX8944 between October 3, 2012 and August 1, 2013. Hulse Cert., Exhibit 5.

2. $248.48 was deposited from SEP account XXXXXX4177 into simple savings account XXXXXX4483 held by Richard Bernardi, Jr., on June 9, 2014, Hulse Cert., Exhibit 6;

3. $5,794.10 was transferred from SEP corporate account XXXXXX4177 to Marilyn Bernardi's account XXXXXX5224 in June of 2014. Id.;

4. $100,000.00 was transferred from SEP corporate account XXXXXX3435 to Marilyn Bernardi's account XXXXXX5224 on August 14, 2014. Id.

5. On August 15, 2012, $500,659.95 was withdrawn from SEP's corporate account XXXXXX2694. That same day, $250,000.00 was deposited into account XXXXXX0908 (ITF Nicole Bernardi), and another $250,000.00 was deposited into ccount XXXXXX1039 (ITF Richard Bernardi, Jr.). Hulse Cert., Exhibit 7.

6. Between October 1, 2012 and December 31, 2012, an additional $55,000.00 from SEP account XXXXXX6057 was transferred into the ITF Richard Bernardi, Jr. account, and another $57,000.00 was transferred into this ITF account from SEP's account XXXXXX6057 in March, 2013. On April 29, 2013, another $15,000.00 from SEP account XXXXXX6057 was transferred to the ITF Richard Bernardi, Jr. account, for a grand total of $377,000.00. Hulse Cert., Exhibit 8.

7. The ITF Nicole Bernardi account shows similar activity. In addition to the $250,000.00 deposited on August 15, 2012, $62,000.00 from SEP account XXXXXX6057 was transferred to the ITF Nicole Bernardi account between October 1, 2012 and December 31, 2012. Another $80,000.00 from SEP account XXXXXX6057 was transferred in March 2013, and an additional $15,000.00 from the same account was transferred on April 29, 2013, for a grand total of $407,000.00. Hulse Cert., Exhibit 9.

8. TD Bank statements also reveal questionable expenditures on behalf of SEP itself, including but not limited to, apparent lease/purchase payments from SEP corporate accounts XXXXXX4177 and XXXXXX6057 to Mercedes Benz Financial Services, totaling $18,177.32 between February 9, 2012 through October 14, 2014, Hulse Cert., Exhibit 10; $25,400.19 in "cash" disbursements from the same two accounts, Hulse Cert., Exhibit 11; and a

check from SEP corporate account XXXXXX6057 to Marilyn Bernardi's personal pension account for $275,000.00 on September 13, 2013. Hulse Cert., Exhibit 12.

**WELLS FARGO ACCOUNTS HELD BY STRATEGIC ENVIRONMENTAL PARTNERS**

XXXXXXXXX8105

**WELLS FARGO ACCOUNTS HELD BY MARILYN BERNARDI**

XXXXXX1527 (High Yield Acct)
XXXXXX6111 (High Yield Acct)
XXXXXXXXX7850
XXXXXX8262 (POD Richard W. Bernardi)
XXXXXX8304 (POD Nicole Bernardi)
XXXXXXXXX7662 (Joint with Nicole Bernardi)

During the period beginning August 1, 2012 through December 31, 2012, numerous transfers were made from SEP's Wells Fargo business account XXXXXXXXX8105, into "Payable On Death" ("POD") savings accounts held by Marilyn Bernardi for her children Nicole Bernardi and Richard W. Bernardi, Jr., respectively:

1. In August 2012, $45,000 from SEP's business account XXXXXXXXX8105 was deposited into each POD account. Hulse Cert., Exhibit 13.

2. In September 2012, another $135,000 from SEP account XXXXXXXXX8105 was deposited into each POD account. Hulse Cert., Exhibit 14.

3. Between October 1, 2012 and October 31, 2012, $60,000 from SEP's account was deposited into each POD account. Hulse Cert., Exhibit 15.

4. In December, 2012, a deposit of $50,000 was made to the Nicole

7

        Bernardi POD account from SEP's corporate account XXXXXXXX8105. Hulse Cert., Exhibit 16.

**CHASE BANK ACCOUNTS HELD BY STRATEGIC ENVIRONMENTAL PARTNERS, LLC**

XXXXXX3020
XXXXXX1660

**CHASE BANK ACCOUNTS HELD BY MARILYN BERNARDI**

XXXXXX9900

        As to Chase Bank, the bank accounts and transfers at issue are as follows:

1. On November 30, 2012, $50,000 was transferred from SEP account XXXXXX3020 to Marilyn Bernardi's account XXXXXX9900.

2. Another $10,000 was transferred from SEP account XXXXXX3020 to Marilyn Bernardi's account XXXXXX9900 on June 26, 2013; and in August 22, 2013, an additional $30,000 was transferred from the SEP account to Marilyn Bernardi's account. Hulse Cert., Exhibit 17.

3. On January 17, 2013, a corporate check from SEP account XXXXXX3020 for $220,000 was written to the "Richard W. Bernardi, Jr. Irrev. Trust." Hulse Cert., Exhibit 18.

4. Additionally, a check for $80,000 was written on SEP's corporate account on April 15, 2013 for estimated personal income taxes owed by Marilyn Bernardi to the State of New Jersey. Hulse Cert., Exhibit 19. Another check, for $325,000, was also written on the SEP account on April 15, 2013, to the United States Treasury, referencing both

Richard's and Marilyn Bernardi's Social Security numbers and "Form 4868," which is a form to be filed for an extension of time to file personal income taxes. Hulse Cert., Exhibit 20.

The foregoing summary of records from all three banks demonstrates that Marilyn and Richard Bernardi co-mingled personal and corporate monies and used monies from corporate accounts for personal purposes unrelated to SEP's business. The amount of SEP corporate monies transferred, disbursed, or otherwise used for non-corporate purposes totals $2,868,391.41. Rather than place tipping fee revenues into the escrow account as required by the ACO/CP, the Debtors used these monies as if they were personal funds.

On February 3, 2016, Debtors SEP and Richard Bernardi were indicted by a New Jersey Grand Jury for a variety of financial crimes. Kinney Cert., Exhibit 5. The crimes charged include Financial Facilitation of Criminal Activity in the First Degree, in which the Grand Jury alleged that SEP and Richard Bernardi engaged in financial transactions among different financial institutions for the purpose of concealing the nature, location and ownership of the monies. Ibid.

## LEGAL ARGUMENT

**APPOINTMENT OF A CHAPTER 11 TRUSTEE IS APPROPRIATE IN LIGHT OF DEBTORS' MISAPPROPRIATION OF FUNDS AND DEBTORS' INDICTMENTS FOR FINANCIAL CRIMES.**

The Bankruptcy Code provides several grounds for the appointment of a trustee or examiner in a Chapter 11 proceeding.

9

Significantly, the Code provides that the Court shall appoint a trustee:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.
>
> [11 U.S.C. § 1104(a).]

"A determination as to whether the Court should appoint a trustee compels the Court to resort to its broad equitable powers. In exercising such power '. . . . courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests.'" In re: Horn & Hardart Baking Co., 22 B.R. 668, 671 (Bankr. E.D. Pa. 1982) (quoting Lemon v. Kurtzman, 411 U.S. 192 (1973)). "The factors used to determine gross mismanagement vary depending on the facts of the case, but often include elements that hint at fraud, in addition to negligence." Morningstar Marketplace, LTD, 544 B.R. 297, 304 (Bankr. M.D. Pa. 2016) (quoting In re Microwave Prod. of Am., Inc., 102 B.R. 666, 676 (Bankr. W.D. Tenn. 1989).

The "practical realities" here compel appointment of a Chapter

11 trustee. An examination of Debtors' past bank account records demonstrates clear and convincing proof that several of the factors enumerated in 11 U.S.C. § 1104(a)(1) are met.[3] See Hulse Cert., passim. Debtor Marilyn Bernardi grossly mismanaged the corporate affairs of Debtor SEP by moving corporate monies into private accounts held by her, either individually, jointly, or in trust with her two children. She also made payments from corporate accounts into her personal pension account and into accounts established and/or held for her children, including an irrevocable trust account established for Richard Bernardi, Jr. See Hulse Cert., Exhibits 7 - 9, 12 - 16, and 18.

Maryiln Bernardi remains the sole manager of the Debtor SEP, and holds in her name all of the personal assets of Debtors Richard and Marilyn Benardi. Her gross mismanagement of Debtors' accounts, coupled with her demonstrable self-dealing as to those accounts is, alone, sufficient cause to doubt her ability to ethically and appropriately act as debtor in possession. Marilyn Bernardi's deposit of corporate monies into personal accounts and into trust accounts for her children seem clearly intended to defraud creditors of their ability to recover funds that should have gone to escrow or to pay debts.

The practice of the Debtors to transfer corporate monies into

---

[3] As of this date, Debtors have not filed, nor identified, bank account records for either the corporation SEP or the individual debtors Richard and Marilyn Bernardi. It is difficult to fathom how

personal accounts, in addition to paying corporate bills from personal accounts, is clear and convincing evidence of negligence in the care of the accounts, if not evidence of gross mismanagement. See Hulse Cert., passim. Further, the February 3, 2016, indictment of Debtors Richard Bernardi and SEP (for which Debtor Marilyn Bernardi is the sole officer) for a variety of financial crimes suggests that Debtors cannot be trusted to uphold proper management of the business and adhere to the Bankruptcy Code. Kinney Cert., Exhibit 5. Thus, it is appropriate to appoint a Chapter 11 receiver under 11 U.S.C. § 1104(a)(1).

Additionally, a Chapter 11 Trustee is in the public interest and is necessary to protect the interests of all creditors. "The twin goals of the standard for appointment of a trustee should be protection of the public interest and the interests of creditors . . . and facilitation of a reorganization that will benefit both the creditors and the debtors. . . ." In re: The 1031 Tax Group, LLC, et al, 374 B.R. 78, 91 (Bankr. S.D.N.Y. 2007) (quoting House Report, 124 Cong. Rec. H11, 11 (daily ed. Sept. 28, 1978)).

Here, two of the three Debtors are under criminal indictment for financial crimes. Kinney Cert., Exhibit 5. The remaining Debtor, Marilyn Bernardi, who allegedly paid all bills and managed the accounts of Debtor SEP, demonstrably failed in her duty to manage corporate accounts properly, and engaged in significant

---

debtors without bank accounts can reorganize under Chapter 11.

12

self-dealing in the course of her management of the corporation. See Hulse Cert., passim. There is therefore little reason to trust the abilities of the Debtors to properly manage the bankruptcy estate in this case. Marilyn Bernardi's past mismanagement of Debtor SEP's financial accounts is strong evidence that she lacks any present ability to manage SEP's Chapter 11 reorganization, or that of her and her husband. Permitting her to remain as debtor in possession would stymie any potential recovery for creditors. All of the facts of these cases indicate that appointment of a Chapter 11 Trustee is not only beneficial, but is in fact necessary to proper reorganization of the Debtors.

## CONCLUSION

For the foregoing reasons, the DEP has demonstrated the need for the appointment of a Chapter 11 Trustee in this matter. A Chapter 11 Trustee should be appointed as soon as possible to manage the Debtors' bankruptcy estates in order to protect the Estates, prevent further mismanagement of Estate funds, and protect the legitimate interests of Debtors and creditors alike.

Respectfully Submitted,

CHRISTOPHER S. PORRINO
ACTING ATTORNEY GENERAL OF NEW JERSEY
Attorney for New Jersey DEP

BY: _____
Kevin J. Fleming
Deputy Attorney General

                                        Robert J. Kinney
                                        Deputy Attorney General, On the Brief