MATTHEW M. FREDERICKS, ESQ., LLC
NJ ATTORNEY ID 01100-2001
111 Northfield Avenue
Suite #205
West Orange, New Jersey 07052
(973) 731-4545
Attorneys for Defendants, Strategic
Environmental Partners, LLC, Richard Bernardi
and Marilyn Bernardi

-----------------------------------------------------------------

| | |
|---|---|
| STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION-MONMOUTHCOUNTY<br>: |
| Plaintiffs, | :<br>:<br>: Docket No.    MON-C-62-16<br>: |
| vs. | :<br>: |
| STRATEGIC ENVIRONMENTAL PARTNERS, LLC, RICHARD BERNARDI and MARILYN BERNARDI, | : CIVIL ACTION<br>:<br>: CERTIFICATION OF<br>: MATTHEW M. FREDERICKS,<br>: ESQ. |
| Defendants. | : |

-----------------------------------------------------------------

I, Matthew M. Fredericks, Esq., of full age, hereby certify as follows:

1.    I am an attorney at law of the State of New Jersey and counsel for Defendants Strategic Environmental Partners, LLC ("SEP"), Richard Bernardi and Marilyn Bernardi (collectively, "Defendants") in the above-captioned consolidated matters, and as such I have full and competent knowledge of the facts recited herein. I make this Certification in support of Defendants' Opposition to Plaintiff NJDEP's Verified Complaint and Application for the Appointment of a Receiver.

2.    Defendant SEP is the owner of certain real property located in Roxbury, New Jersey

which is the site of the former Fenimore Landfill (the "Property" and/or the "Landfill").

3.    The Landfill ceased operating in or around 1979 but was never properly closed or

"capped".

4.    In 2010, SEP purchased the Property for the purpose of capping the Landfill and

installing a solar energy facility on the capped Landfill.

5.    In December 2011, SEP began accepting NJDEP-approved recyclable material as part

of the redevelopment of the Landfill.

6.    In May 2012, Plaintiff NJDEP ordered SEP to cease its remediation of the Landfill,

alleging that SEP had failed to deposit in an escrow account the "tipping fees", i.e. revenue generated

from SEP's acceptance of NJDEP-approved fill material.

7.    In response to Plaintiff NJDEP's order, SEP applied to the New Jersey Superior Court

(Morris County) for an injunction barring Plaintiff NJDEP from taking any action to halt SEP's

remediation of the Landfill.  Plaintiff then consented to permit SEP to continue its redevelopment

project pending a hearing in the New Jersey Office of Administrative Law.

8.    On June 26, 2013, Plaintiff issued an "Emergency Order" self-authorizing Plaintiff to

seize SEP's private property under the guise of abating an alleged imminent threat to the

environment.

9.    On November 13, 2014, the New Jersey Appellate Division vacated the NJDEP's

June 26, 2013 "Emergency Order" on the grounds that the NJDEP "exceeded its authority by seizing

control of SEP's property without first securing judicial approval." Strategic Environmental

Partners, LLC v. New Jersey Dept. of Environmental Protection, 438 N.J. Super. 125, 131 (App.

Div. 2014).

10.    The Appellate Division ruled that the NJDEP Commissioner lacked authority to issue the Emergency Order without judicial action. *Id.* at 140.

11.    Further, the Appellate Division declared that even if the Commissioner did have such authority, "any action predicated on N.J.S.A. 13:1E-125.4(a) **or the Legacy Landfill Law in general constituted an unlawful retroactive application**." *Ibid.* (emphasis added)

12.    The Appellate Division further found that the NJDEP's seizure of SEP's private property without judicial approval caused a "manifest injury to SEP". *Id.* at 143.

13.    The Appellate Division's November 13, 2015 ruling accurately states that the NJDEP has never made any showing that the alleged hydrogen sulfide emissions ("H2S") from the Property present any threat to human health and/or the environment.

14.    Plaintiff's seizure of SEP's private property halted SEP's redevelopment of the Fenimore Landfill and immediately terminated SEP's business. Since June 26, 2013, as a direct and proximate result of Plaintiff's unauthorized seizure of the Landfill, SEP has not occupied the Landfill property, has not conducted any business and has not earned any income.

15.    On or about September 24, 2013, several months after Plaintiff NJDEP unlawfully seized SEP's private property, Plaintiff filed a Complaint in the New Jersey Superior Court (Morris County) wherein Plaintiff alleged that Defendants had failed to deposit tipping fees into an escrow account.  Copies of relevant portions of Plaintiff's September 24, 2013 Complaint are annexed hereto as Exhibit A.

16.    Plaintiff's September 24, 2013 Complaint asked the Court to "impose a constructive trust on all tipping revenues received by Defendants". See Exhibit A.

3

17.    Plaintiff's September 24, 2013 Complaint also asked the Court to "appoint a receiver to assume control of the Landfill property". See Exhibit A.

18.    Plaintiff's September 24, 2013 Complaint also asked the Court to "order Defendants to provide an accounting, at Defendants' expense...of the business records and accounts of SEP and the personal records and accounts of Richard and Marilyn Bernardi..." See Exhibit A.

19.    The New Jersey Superior Court (Hon. Thomas V. Manahan, P.J.C.V.) denied Plaintiff's application for a constructive trust and a receiver over Defendants' assets.

20.    Plaintiff and Defendants remain engaged in litigation in the New Jersey Superior Court, Morris County under consolidated Docket Numbers MRS-L-2278-13, MRS-L-2533-13 and MRS-L-2621-13 (the "Morris County Litigation"). The Court has scheduled a trial date of September 19, 2016.

21.    In the Morris County Litigation, Defendants have filed a counterclaim against Plaintiff alleging inverse condemnation pursuant to the New Jersey Eminent Domain Act, N.J.S.A. 20:3-1 to -50 as a result of Plaintiff's unauthorized seizure and occupation of SEP's private property since June 26, 2013.

22.    In the Morris County Litigation, Defendants are seeking damages against Plaintiff in excess of $18,500,000. In 2015, the Township of Roxbury Tax Assessor determined the Fair Market Value of the Landfill Property to be $18,500,000.00. See property tax assessment sheet annexed hereto as Exhibit B.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me is willfully false, I am subject to punishment.

Matthew M. Fredericks, Esq.

Dated: June 13, 2016

# EXHIBIT A

JOHN J. HOFFMAN
Acting Attorney General of New Jersey
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, New Jersey 08625-0093
Attorney for New Jersey Department of
    Environmental Protection

By: Robert J. Kinney
    NJ Attorney No. 0038572005
    Deputy Attorney General
    (609) 292-1557

|  |  |
|---|---|
| | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MORRIS COUNTY<br>DOCKET NO.: MRS- |

|  |  |  |
|---|---|---|
| JOHN J. HOFFMAN, Acting<br>Attorney General of New Jersey,<br>and STATE OF NEW JERSEY,<br>DEPARTMENT OF ENVIRONMENTAL<br>PROTECTION,<br><br>                    Plaintiffs,<br><br>        v.<br><br>STRATEGIC ENVIRONMENTAL<br>PARTNERS, LLC, RICHARD<br>BERNARDI, individually, and<br>MARILYN BERNARDI, individually,<br><br>                    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br>COMPLAINT |

*RECEIVED & FILED SUPERIOR COURT 2013 SEP 24 A 8 32 MORRIS COUNTY CIVIL DIVISION*

Plaintiffs John J. Hoffman, Acting Attorney General of

the State of New Jersey, with offices located at 25 Market

Street in Trenton, New Jersey, and the State of New Jersey,

Department of Environmental Protection ("Department" or "DEP"),

with offices located at 401 East State Street in Trenton, New Jersey, by way of Complaint against Strategic Environmental Partners, LLC ("SEP"), and Richard and Marilyn Bernardi, individually (collectively, "Defendants"), say:

## NATURE OF THE ACTION

1.    This civil suit seeks damages, disgorgement of ill-gotten profits, civil penalties, and injunctive relief against Defendants, the owners and operators of the Fenimore Landfill ("Landfill").    In short, Defendants fraudulently secured a closure authorization from the Department, misappropriated funds dedicated to and ultimately necessary for closure expenses, and created a public nuisance by failing to control noxious hydrogen sulfide emissions created by Defendants' activities on the Landfill.

2.    Defendants fraudulently secured approval to redevelop the Landfill by omitting debts of approximately $2.5 million in a required financial plan submission.    Defendants induced the Department to rely upon the deficient financial plan to approve an underfunded project.    Had the Department known the scope of Defendants' debts it would not have approved a closure plan without proof of adequate revenues to effectuate the closure.

3.    Defendants misappropriated at least $1.2 million in acknowledged tipping revenues and an estimated $3.4 million in total tipping revenue earned from fees charged to waste haulers for the delivery of hundreds of thousands of cubic yards of crushed construction and demolition debris ("C&D fines") and other fill material at the Landfill. Defendants had agreed to deposit all such "tipping revenues" into escrow to be used only for the cleanup, capping, and installation of environmental controls at the Landfill. But, although Defendants opened an escrow account, they kept the money themselves and never actually deposited any tipping revenues.

4.    Beginning in November 2012, nearly one year after Defendants began importing fill, the Landfill plagued surrounding neighborhoods with the pungent odor of rotten eggs. The odor was hydrogen sulfide, a noxious byproduct of rotting ground-up gypsum wallboard that Defendants were paid to accept at the Landfill. Under their agreement with the Department, Defendants were required to control odors by covering all imported demolition debris with clean fill at the end of every day. However, Defendants never fully complied with this provision of their closure plan approval and the odors only grew worse as the months passed.

5.    On November 30, 2012, the Department filed an Order to Show Cause in Superior Court, Morris County, seeking to

prevent SEP from accepting additional fill material until Defendants brought odors under control. On December 10, 2012 Judge Deanne Wilson ordered Defendants to cover the debris at the end of each day with a layer of clean soil, but Defendants failed to comply. Defendants dithered and made excuses and continued to accept deliveries of demolition debris while the odors grew worse, thereby causing great discomfort to the residents of Roxbury Township forced to live daily with the worsening hydrogen sulfide fumes.

6. Richard and Marilyn Bernardi used SEP to perpetrate a fraud and to divert tipping revenues away from the closure-dedicated escrow fund for their own use. Richard Bernardi is individually liable for his integral role in all of SEP's unlawful practices. Marilyn Bernardi, as SEP's owner and sole member, is individually liable for damages and penalties sought by Plaintiffs.

### PARTIES

7. Plaintiff John J. Hoffman, Acting Attorney General of the State of New Jersey, is charged with enforcing violations of the False Claims Act, N.J.S.A. 2A:32C-1 to -17.

8. Plaintiff Department of Environmental Protection is a principal department of the State of New Jersey. The Department is charged with enforcement of New Jersey's

4

pre-existing debts that were required to be disclosed to the
Department.

113. Defendants concealed the Financial Plan's
material omissions and the Department reasonably believed the
Financial Plan to be representative of all expenses and debts
required to be disclosed by N.J.A.C. 7:26-2A.9(f).

114. The Department justifiably relied upon the false
representations in the Financial Plan to enter into the ACO and
issue the Closure Plan to SEP.

115. Considering Defendants' true financial situation,
SEP would not be able to fund closure activities from the
tipping revenues if these monies were funneled to the repayment
of its pre-existing debt. Under these circumstances, the
Department would not have approved a closure plan for SEP and no
fill would have been imported to the Landfill.

116. Had Defendants disclosed the pre-existing debts
in the Financial Plan without accounting for additional revenues
to cover the shortfall between revenues and expenses, the
Department would have negotiated for additional financial
assurance and may not have entered into the agreement. In any
event, DEP would not have entered the ACO as currently drafted.

**WHEREFORE**, Plaintiffs respectfully request the entry of a judgment against Defendants SEP, Richard Bernardi, and Marilyn Bernardi jointly and severally:

    a. Imposing equitable remedies, including:

        1. Imposing a constructive trust on all tipping revenues received by Defendants;

        2. Ordering Defendants to provide an accounting, at Defendants' expense and performed in accordance with Generally Accepted Accounting Principles, of the business records and accounts of SEP and the personal records and accounts of Richard and Marilyn Bernardi, from the time of SEP's purchase of the Landfill to the present;

        3. Ordering Defendants to provide all underlying documents and information used to prepare the accounting, including but not limited to, invoices, dump tickets, receipts, checks received, and bank records;

        4. Appointing a receiver to assume control of the Landfill property on completion of the Department's abatement measures and to carry out closure activities prescribed in the

Closure Plan, drawing upon the tipping revenues in the trust;

5. Ordering Defendants to reimburse the receiver for all costs to complete the Landfill closure which exceed the value of the trust funds; and

6. Ordering Defendants to pay the reasonable expenses of the receiver to administer the Landfill closure.

b. Awarding costs; and

c. Granting such other relief as the Court shall deem just and proper.

## COUNT 3

### (False Claims Act, N.J.S.A. 2A:32C-3(g))

117. Plaintiffs repeat and re-allege the allegations set forth above as if set forth herein in their entirety.

118. The False Claims Act imposes civil penalties and treble damages upon any person who knowingly makes or causes to be made a false record or statement to conceal, avoid, or decrease an obligation to transmit money to the State. N.J.S.A. 2A:32C-3(g).

119. Civil penalties are linked to the penalty range in the federal False Claims Act, 31 U.S.C. 3729 et seq. and currently range from $5,500 to $11,000 per violation.

120. At all times relevant to this complaint, Defendants knew of their obligation to transmit tipping revenues into an escrow account under the control of the Department for exclusive use to fund the Landfill's closure. If the Defendants defaulted, the escrow funds would pass to the State for closure purposes. The State therefore has a compelling interest in the use of the escrow funds, which inure to the public's benefit when used as required to fund closure costs, as well as a contingent ownership right to the monies in the event of default by SEP.

121. In direct violation of the ACO, Defendants did not deposit any of at least $1.2 million in acknowledged tipping revenues and an estimated $3.4 million in total tipping revenue into escrow. Defendants misappropriated all of the tipping revenues for themselves.

122. Defendants submitted -- and Richard Bernardi as SEP's manager, who oversaw all daily operations of the LLC, caused to be submitted -- false records to the Department every time Defendants provided monthly reports that omitted tipping revenues.

123. Defendants omitted this information to conceal the extent of revenues collected by Defendants and thereby avoid making escrow payments. This omission constitutes a false statement to the State.

35

124. To date the State has incurred damages in the amount of at least $400,000 to install a landfill gas collection system and a temporary cap on the Landfill.

125. These closure-related costs were paid with public funds because Defendants have misappropriated the tipping revenues and the escrow account is empty.

126. The State will spend significant public funds in the future for closure-related expenses at the Landfill.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against Defendants SEP, Richard Bernardi, and Marilyn Bernardi jointly and severally:

a. Assessing civil penalties of $11,000 allowable under N.J.S.A. 2A:32C-3 for each of the eighteen monthly reports submitted between December 2011 and June 2013 that omitted the rate and total revenues charged for deliveries of fill material to the Landfill in that period, with interest;

b. Awarding damages in the amount of three times the value of the funds owed to the escrow account, with interest;

c. Awarding reasonable attorney's fees, expenses, and costs allowable pursuant to N.J.S.A. 2A:32C-8; and

36

d.    Granting such other relief as the Court shall

deem just and proper.

## COUNT 4

(False Claims Act, N.J.S.A. 2A:32C-3(d))

127. Plaintiffs repeat and re-allege the allegations set forth above as if set forth herein in their entirety.

128. The False Claims Act imposes civil penalties and treble damages upon any person who has possession, custody, or control of money to be used by the State and who knowingly delivers or causes to be delivered less property than the amount for which the person receives a certificate or receipt. N.J.S.A. 2A:32C-3(d).

129. Defendants took possession and retain control over tipping revenues, which monies were to be escrowed in the Department-controlled account for use at the State's behest under the terms of the ACO and Closure Plan.

130. Defendants issued invoices and received receipts and/or certificates from the haulers in the amount of the tipping revenues charged by Defendants.

131. Defendants did not deliver any of the tipping revenues into the escrow account.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against Defendants SEP, Richard Bernardi, and Marilyn Bernardi jointly and severally:

    a.   Assessing civil penalties of $11,000 for each of the eighteen monthly reports submitted between December 2011 and June 2013 that omitted the rate and total revenues charged for deliveries of fill material to the Landfill in that period, with interest;

    b.   Awarding damages in the amount of three times the value of the funds owed to the escrow account, with interest;

    c.   Awarding reasonable attorney's fees, expenses, and costs allowable pursuant to N.J.S.A. 2A:32C-8; and

    d.   Granting such other relief as the Court shall deem just and proper.

## COUNT 5

### (Breach of Fiduciary Duty)

132. Plaintiffs repeat and re-allege the allegations set forth above as if set forth herein in their entirety.

133. An implied fiduciary relationship existed between Defendants and the Department. Defendants were entrusted to charge and take receipt of tipping revenues and to conduct the

38

closure of the Landfill for the benefit of the public and the environment. Defendants, by entering into the ACO and Closure Plan, were under a duty to the State to fully and properly account for all tipping revenues received, to escrow all of the funds for use in the Landfill closure, and to use the funds only for pre-approved closure costs.

134. The tipping revenues intended for the escrow account are not assets belonging to Defendants. N.J.A.C. 7:26-2A.9(g)(19).

135. Defendants breached this duty by concealing the amount of tipping revenues received, by refusing to account for how these funds were used, and by failing to escrow the funds.

136. To date the State has incurred damages in the amount of at least $400,000 to install a landfill gas collection system and a temporary cap on the Landfill.

137. These closure-related costs were paid with public funds because Defendants have misappropriated the tipping revenues and the escrow account is effectively empty.

138. The State will spend more public funds in the future for closure-related expenses at the Landfill.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against Defendants SEP, Richard Bernardi, and Marilyn Bernardi jointly and severally:

    a.   Imposing a constructive trust on all tipping revenues;

    b.   Awarding damages in the amount of the tipping revenues collected by Defendants and which were required to be placed into escrow, with interest;

    c.   Awarding costs; and

    d.   Granting such other relief as the Court shall deem just and proper.

## COUNT 6

### (Unjust Enrichment)

139. Plaintiffs repeat and re-allege the allegations set forth above as if set forth herein in their entirety.

140. Defendants agreed to close the Landfill in return for permission from the State to import regulated fill material that Defendants were not otherwise authorized by law to accept.

141. The fill material was a necessary component of the Solar Project, from which Defendants expected to obtain significant revenue.

142. Defendants received a benefit in return for promising to perform a landfill closure that would inure to the benefit of the public and to the environment.

143. The tipping revenues intended for the escrow account are not assets belonging to Defendants. N.J.A.C. 7:26-2A.9(g)(19).

144. Defendants misappropriated tipping revenues dedicated to the Landfill closure without performing the closure.

145. The State upheld its end of the bargain by allowing Defendant to import fill material, and Defendants enriched themselves unjustly by withholding the tipping revenues and by not performing their obligations under the ACO.

146. To allow Defendants to retain the tipping revenues would be a manifest injustice.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against Defendants SEP, Richard Bernardi, and Marilyn Bernardi jointly and severally:

a.  Imposing a constructive trust on all tipping revenues received by Defendants;

b.  Ordering Defendants to provide an accounting, at Defendants' expense and performed in accordance with Generally Accepted Accounting Principles, of the business records and accounts of SEP and the personal records and accounts of Richard and Marilyn Bernardi, from the time of SEP's purchase of the Landfill to the present;

41

c. Ordering Defendants to provide all underlying documents and information used to prepare the accounting, including but not limited to, invoices, dump tickets, receipts, checks received, and bank records;

d. Awarding disgorgement to Plaintiffs of all tipping revenues by which Defendants have been unjustly enriched, with interest;

e. Awarding costs; and

f. Granting such other relief as the Court shall deem just and proper.

### COUNT 7

#### (Public Nuisance)

147. Plaintiffs repeat and re-allege the allegations set forth above as if set forth herein in their entirety.

148. Hydrogen sulfide is being emitted from the Landfill and has traveled (and continues to travel) off-site into the surrounding areas where noxious odors pollute the environment and negatively affect the public's reasonable enjoyment of life and property in the vicinity of the Landfill.

149. Emissions of hydrogen sulfide gas from the Landfill constitute a substantial and unreasonable interference with the public rights of the State's citizens, including but not limited to the right to public comfort and welfare, and the

42

right of members of the public to use and enjoy public spaces such as schools, parks, playing fields, and the public streets, and the use of private property, without unreasonable intrusion or interference.

150. Defendants, by their operation of the Landfill and the resulting emissions of hydrogen sulfide gas therefrom, are knowingly, intentionally or negligently creating, maintaining, and/or contributing to a public nuisance disruptive to the State's citizens and residents on whose behalf Plaintiffs seek relief.

151. Defendants failed to take reasonable and timely measures to control and abate odors from the Landfill.

152. Defendants repeatedly were directed to implement odor control measures, including the application and maintenance of a continuous layer of clean cover material during Phase I, but Defendants did not fully comply either with orders from the Court or from DEP.

153. If unabated, hydrogen sulfide emissions will continue to contribute to noxious odors and resulting in pollution of the environment and unreasonably interfering with the rights of the public.

154. By failing to abate odors from the Landfill, Defendants have caused and contributed to, and continue to cause and contribute to, the maintenance of a public nuisance.

43

155. Defendants are jointly and severally liable for these emissions under the common law of public nuisance.

**WHEREFORE**, Plaintiffs respectfully request the entry of a judgment, against Defendants SEP, Richard Bernardi, and Marilyn Bernardi jointly and severally:

   a.  Holding Defendants liable for creating, contributing to, and/or maintaining a public nuisance;

   b.  Awarding reimbursement to Plaintiffs for actual response costs already incurred by the Department, with interest;

   c.  Imposing liability for reimbursement of continuing expenditures by the Department to abate and mitigate hydrogen sulfide emissions at the Landfill;

   d.  Imposing liability for post-mitigation monitoring and maintenance costs;

   e.  Awarding costs; and

f.    Granting such other relief as the Court shall

deem just and proper.

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY

By: _____
Robert J. Kinney
NJ Attorney No. 0038572005
Deputy Attorney General

DATE: September 24, 2013

45

# EXHIBIT B

Block: 7404
Lot: 1
Qual:
Card: N (#1 of 1)

Land Desc: 105 AC
Bldg Desc:
Add Lots:
Acreage: 105.000    Class: 4B

Owners Name: STRATEGIC ENVIRONMENTAL PARTNERS
Street Address: 7 MICHAEL CT
City & State: MILLSTONE, NJ
Property Loc: 100 MOUNTAIN RD

Bank:
Zip: 08510
Zone: QS

Land: 11,631,000    Exemption    Net Taxable Value Deductions
Impr: 0    Code:    Cd No-Ow
Total: 11,631,000    Value: 0    11,631,000

Map: G2    ROXBURY TOWNSHIP

### SALES HISTORY

| Grantor | Date | Book/Page | Price | N# |
|---|---|---|---|---|
| SUSSEX & WARREN HOLDING CORP | 02/10/11 | 21758/617 | 1000000 | |

### ASSESSMENT HISTORY

| Year | Land | Impr | Total |
|---|---|---|---|
| 1998 | 280000 | 0 | 280000 |
| 2000 | 525000 | 0 | 525000 |

### LAND CALCULATIONS

| Frt | Rr | SB | T | FF | Avg | Tabl | Eaf | Units | Rate | Site | Rate | Site | Cond | Cond | Value | Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 105.000 AC | 5000 | 1106000 | 100 | 100 | | | 1163 1000 | |

SF: 4,573,800    Auto: N    Land Value: 11,631,000

LANDFILL INCOME

Net Adj: 100.00

### SITE INFORMATION

Road: PAVED
Curbs: NO
Sidewalk: NO
Info:
Measured:
Inspected:

Utilities:
Sewer: YES
Water: YES
Gas: NONE

Topo: LEVEL
Neigh: 902
VCS: A902

### BUILDING INFORMATION

Type and Use:
Story Height:
Style:
Exterior Finish:
Roof Type:
Roof Material:
Foundation:

Class/Quality:
Condition:
Year Built/Eff A: 0000 / 50 (Y)
Windows:
Livable Area: 0 SF
Interior Cond:
Interior Wall:

### RESIDENTIAL COST APPROACH

Main Bldg
Basement
Heat/AC
Plumbing
Fireplace
Attic
Deck/Patio/Garage/Misc

Base Cost: 0    CCF: 295 CLA: 0    Cost New: 0
Phys Depr: 45.50 (Y)    Func Depr:    Net Depr: 0    54.50
Loc Depr:    Mkt+:    Mkt-:    Bldg Value: 0

### BUILDING PERMITS/REMARKS

| Date | Work Description | Amount | Compl. |
|---|---|---|---|

Detached Items:
LAND FILL ESTIMATED YEARLY NET INCOME
IS $3,780,000 FOR A EHV OF 18.5 MILLION
LANDFILL INCOME

### ROOM COUNT

| | B | 1 | 2 | 3/A | Tot |
|---|---|---|---|---|---|
| Living Rm | | | | | |
| Dining Rm | | | | | |
| Kitchen | | | | | |
| Dinette | | | | | |
| 5 Fixt Bath | | | | | |
| 4 Fixt Bath | | | | | |
| 3 Fixt Bath | | | | | |
| 2 Fixt Bath | | | | | |
| Bed Room | | | | | |
| Fam Room | | | | | |
| Den/Other | | | | | |

Baths: M:    A:    O:
Kitchens: M:    A:    O:

Old B: 34
Old L: 29    03/30/15    0

A:
B:
C:
D:
E:
F:
G:
H:
J:
K:
L:

M:
N:
O:
P:

Land: 11,631,000    Impr: 0    Total: 11,631,000

Copyright (c) 1999 MicroSystems-NJ.Com, L.L.C.