LAW OFFICES OF BATYA G. WERNICK
BATYA G. WERNICK, ESQ. (ID No: 036941992)
317 Belleville Avenue
Bloomfield, New Jersey 07003
Tel: (973) 748-7619
Fax: (973) 860-1343
Email: bgwlaw@verizon.net
Attorney for Debtors

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| | : | |
| Strategic Environmental Partners, LLC, | : | Case Nos: 16-22151 (CMG) and |
| | : | 16-22153 (CMG) |
| Debtor. Case No: 16-22151 | : | |
| | : | |
| | : | |
| In re: | : | DEBTORS' MEMORANDUM OF LAW |
| | : | IN OPPOSITION TO THE NEW JERSEY |
| Marilyn I. Bernardi and | : | DEPARTMENT OF ENVIRONMENTAL |
| Richard W. Bernardi, | : | PROTECTION'S AND THE UNITED |
| | : | STATES DEPARTMENT OF JUSTICE'S |
| Debtors. Case No: 16-22153 | : | MOTIONS TO APPOINT A CHAPTER |
| | : | 11 TRUSTEE |

Hearing Date: August 23, 2016 at 2:00 p.m.

The Honorable Christine M. Gravelle

## I.
## <u>INTRODUCTION</u>

Both the State of New Jersey's Department of Environmental Protection (hereinafter "the

NJDEP") and the United States Department of Justice Office of the United States Trustee

(hereinafter "the USDOJ") have asked this Court to appoint a Chapter 11 Trustee over the estates

of Debtors Strategic Environmental Partners, LLC (hereinafter "SEP") and Marilyn Bernardi and

1

Richard Bernardi.  In the interest of economy, Debtors submit one opposition in response to both motions as both motions seek the same relief, rely on the same law and facts and are scheduled to be heard simultaneously.

The Motions should be denied in their entirety because there is no legitimate reason for a trustee to be appointed in either matter and to do so would hinder the productive re-organization of both bankruptcy estates.  The Debtors have not violated any law, have not defrauded any creditors and have not mismanaged any funds.  Indeed glaringly absent from both movants' briefs is any citation to any law violated by the Debtors despite the repeated false allegations of fraud and misconduct.  And the reference to a recently filed criminal indictment against SEP and Richard Benardi is absolutely unavailing as further discussed below.  Also any supposed inconsistencies in Debtors' schedules, as referred to by the USDOJ as a basis for concern, were inadvertent error by Debtors' counsel, will be corrected and cannot support a claim that the Debtors engage in fraudulent conduct as the USDOJ suggests.

In fact, the circumstances necessitating the Debtors' petitions for bankruptcy are solely the result of the NJDEP's own misconduct, which misconduct has been recognized by the State of New Jersey's Superior Court Appellate Division.  And in fact, the NJDEP's several abusive attempts to control SEP has been rejected by other judges and should be rejected by this Court as well.  The motions rely only on the allegation that Mrs. Bernardi, as the sole owner of SEP and its manager, should have been depositing SEP's revenues into an escrow account and that her failure to do so amounts to fraud or mismanagement.  However, the escrow account at issue was improperly required by the State of New Jersey and Mrs. Bernardi, was actually well within her rights to use income from SEP as she saw fit.  No one has been "defrauded" by SEP or the

2

Bernardis.  In reality it is the NJDEP's own actions which have caused the improper and

unnecessary shutdown of SEP, the termination of the Bernardis' livelihood and then their

resultant inability to pay some creditors.

SEP's and the Bernardis' bankruptcies are necessary to allow for the Bernardis to regain

control of their asset so that they can pay off any of their creditors and to allow them to recover

their income stream.  A key asset of the bankruptcy estates is SEP's claim against the NJDEP for

inverse condemnation.  SEP in its civil matters against the NJDEP is likely to regain controle of

its single asset allowing it to eventually operate, or if ultimately necessary, to sell the land on

which it operates.  The Bernardis are familiar with SEP's operations and its assets, including its

legal claims against the State and are better suited to maintain control over these than a trustee

would be.  It is certainly in the interest of the other creditors if the Debtors retain control over the

both estates.

## II.
## STATEMENT OF FACTS

SEP is the owner of real property located in Roxbury, New Jersey which is the site of the

former Fenimore Landfill ("the Property.") The landfill itself ceased operting in or around 1979

but was not properly "capped."  In 2010, SEP (which was formed by the Bernardis who are its

only members) purchased the Property for the purpose of capping the landfill and  installing a

solar energy facility on the capped landfill.  In December 2011, SEP began accepting NJDEP-

approved recyclable material as part of the redevelopment of the Property.  However, about five

months later, the NJDEP ordered SEP to cease its remediation of the Property alleging SEP

failed to deposit "tipping fees" into an escrow account the NJDEP had required.  "Tipping fees" are revenue generated by accepting the NJDEP-approved land fill material.  SEP sought an injunction to prevent the NJDEP from halting SEP's remediation of the Property.  From that action, the NJDEP consented to permit SEP to continue its redevelopment efforts pending a hearing in the New Jersey Office of Administrative Law.

Then in June 2013, the NJDEP improperly issued its own "Emergency Order" allowing it to seize SEP's private property under the pretense that it was abating an alleged imminent threat to the environment.  The New Jersey Appellate Division vacated this "Emergency Order" a year and a half later in November 2014 finding that the DEP had exceeded its authority. (*Strategic Environmental Partners, LLC v. New Jersey Dept. Of Environmental Protection,* 438 N.J. Super. 125, 131 (App. Div. 2014).) The Appellate Division ruled that the NJDEP lacked the authority to issue the Emergency Order without judicial action. (*Id.* at 140.) It also declared that even if it did have such authority, "any action predicated on N.J.S.A. 13-1E-125.4(a) or the Legacy Landfill Law in general [as the NJDEP'S was] constituted an unlawful retroactive application." (Ibid.) The court further stated that the NJDEP's seizure of SEP's private property without judicial approval caused a "manifest injury to SEP". (*Id.* at 143.)  And the Appellate Division's ruling noted that the NJDEP never made a showing that alleged hydrogen sulfied emissions it complained about, present any threat to human health and/or the environment.  (In other words, there was no proven/legitimate basis for any "Emergency Order" and no basis for its seizure of private property.)

The NJDEP's seizure of SEP's property halted SEP's operations and redevelopment of the Fenimore Landfill terminating its business and the Bernardis' income at once.  Since June 26,

4

2013, SEP has not occupied the Landfill property, has not conducted any business and has not earned any income. (See Docket Report No. 19 in the SEP bankruptcy case which is Matthew Frederick, Esq.'s letter and Certification previously provided to this Court in order to explain the underlying facts and which includes supporting Exhibits. Mr. Fredericks is the attorney for the Debtors in their State Court civil matters.)

Further, the NJDEP's contention in these bankruptcy matters, that SEP was obligated to place tipping fees into an escrow account, is simply wrong. There is no legally enforceable escrow requirement for SEP's remediation project on the Property and SEP is, was and at all times, has been free to deposit its income into any accounts it wishes. Simply put, the NJDEP has no right to control how the Bernardis use SEP's income. Indeed in September 2013 shortly after seizing the property, the NJDEP filed a complaint against the Debtors in the Morris County Superior Court alleging that they had failed to deposit the tipping fees into an escrow account. The NJDEP asked the Court to impose a constructive trust and appoint a receiver over SEP. The Court refused. (See the Fredericks Certification, Docket Report No. 19.) The Debtors have counterclaimed for Inverse Condemnation and are seeking damages in the amount of $18,500,000 based on the county's tax assessor's valuation figure. (The Morris County litigation consists of two consolidated matters which until the current stay were pending for trial on September 16th. But in the meantime the NJDEP filed another complaint in Monmouth County on essentially the same claims in an apparent attempt to forum shop. It had again requested the appointment of a receiver. However, that action has also now been stayed/dismissed pending these bankruptcy cases.)

Therefore, its current motion for appointment of a trustee is the NJDEP's *third/fourth*

5

attempt to improperly prevent debtors from controling their own property and keeping it in its

own hands. Nothing the Bernardis have done has harmed SEP or is evidence of any

mismanagement whatsoever.  The financial constraints SEP and the Bernardis are now facing

arise solely from the NJDEP's wrongful acts.  SEP's pursuit of its inverse condemnation claim as

well as the Appellate Division's finding that the seizure was unlawful indicate that SEP will

regain control of the Property.  SEP and the Bernardis will then be able to repay their debts.

The appointment of a trustee will hinder SEP's litigation against the NJDEP and its operations.

Therefore, the motions should be denied.[1]


## III.
## LEGAL ARGUMENT

**A.**    **Both Movants Have Failed To Meet Any Standard Of Proof To Establish The Need For A Trustee.**

There is a strong presumption in Chapter 11 cases that the debtor-in-possession should be

permitted to remain in control of the company absent a showing of the need for the appointment

of a trustee.  (*In Re Intercat, Inc.,* 247 B.R. 911, 920 (S.D. of Georgia, U.S. Bnk. Ct. 2000); and

*In re Sharon Steel Corp,* 871 F.2d 1217, 1125 (3d Cir. 1989) stating, "It is settled that

appointment of a trustee should be the exception, rather than the rule.")

11 U.S.C. §§1104 (a)(1) provides that a party seeking appointment of a trustee must

prove "cause" for the need of the appointment; such as fraud, dishonesty, incompetence, or gross

mismanagement.  And section (a)(2) provides that appointment may be appropriate when the

movant can prove that doing so would serve the estate's interests, a lesser stringent ground for

appointment.  However, and importantly, in the 3rd Circuit, the Courts have repeatedly held that

establishing the need for a trustee under *both* sections must be accomplished with evidence that

---

[1] The USDOJ had also asked for dismissal or conversion of these matters due to SEP's failure to provide liability insurance on its property.  However, since the insurance has since been obtained, it is understood that the USDOJ is not pursuing that aspect of its original motion and therefore this brief will not address that issue.

meets the "clear and convincing" standard of proof and not just a "preponderance of the evidence" standard.  For instance, the Appellate court upheld the Bankruptcy Court's decision in *In Re G-I Holdings, Inc.,* 385 F.3d 313, 295 B.R. 502, 507 (Bankr. D. New Jersey 2003) which denied the creditors committee's application for appointment of a trustee.  The Bankruptcy Court found that the committee's *unproven* allegations did not amount to "clear and convincing" evidence that a trustee was needed.  (*See also In re Sharon Steel Corp, supra,* 871 F.2d 1217, 1126 (3d Cir. 1989) which confirmed this standard of proof and indicated that the "clear and convincing" standard of proof applies for both section 11 U.S.C. §§1104(a) (1) and even 1104(a)(2) when considering whether cause or any grounds exists to appoint a trustee.)

The *G-I Holdings* Court stated that "In every motion to appoint a trustee under section 1104(a), the movant must prove the need for a trustee by ***clear and convincing*** evidence. (*Emphasis added.) (G-I Holdings, citing In Re Sharon Steel Corporation,* 871 F.2d 1217 at 1226 (3ʳᵈ Cir. 1989).) The *G-I Holdings* Court then explained, "Evidence is "clear and convincing" when:

> [it] produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."

(*In Re G-I Holdings, supra at 508, citing Matter of Jobes*, 108 N.J. 394, 407, 529 A.2d 434 (1987) (*quoted in Cruzan by Cruzan v. Director, Missouri Dept. Of Health,* 497 U.S. 261, 285 n.11, 110 S.Ct. 111 L.E.2d 224 (1990).)

And in *In Re Marvel Entertainment Group, Inc., 140 F.3d 463, 473 (3d Cir. 1998),* the Court also applied the "clear and convincing" standard of proof and discussed the usual "presumption" *against* appointing a trustee stating:

> "It is settled that appointment of a trustee should be the exception, rather than the rule. In the usual chapter 11 proceeding, the debtor remains in possession throughout reorganization because current management is generally best

7

suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate. Thus the basis for the strong presumption against appointing an outside trustee is that there is often no need for one: [t]he debtor-in-possession is a fiduciary of the creditors and, as a result, has an obligation to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization. The strong presumption also finds its basis in the debtor-in-possession's usual familiarity with the business it had already been managing at the time of the bankruptcy filing, often making it the best party to conduct operations during the reorganization."

*(In Re Marvel Entertainment Group, Inc., supra, at 473 (3d Cir. 1998)(internal quotations and citations omitted.)*

The cases cited by the movants which allowed for the appointment of a trustee are inapposite. They all involve situations where the Debtor was a corporation (not a sole proprietor as here) and involved multiple creditors who were concerned about the company's assets being depleted. That is not the case here. The creditors in this case arose only because of the NJDEP's actions, not the Debtors. The other creditors will be paid if the Debtors are permitted to control their assets and pursue their claims. On the other hand, if SEP is controlled by a trustee or the NJDEP it is more likely that no other creditor will be paid.

By no stretch of the imagination have the movants met their burden of proof (even by a "preponderance of the evidence" standard.) Both the USDOJ's and the NJDEP's motions are based only on allegations in the NJDEP's self-serving civil complaint against SEP as well as a completely ambiguous and facially deficient/defective criminal indictment. There are no allegations by any other creditors of the estate and certainly nothing *proven,* as the law requires. Moreover, the allegations relate solely to one claim; that the Debtors were required to deposit funds into an escrow account which, as discussed further below, was illegally imposed on them by the NJDEP. And as part of that allegation, the movants incorrectly claim that the Debtors improperly transferred funds to personal accounts. Movants ignore the fact that SEP is a limited liability company and not a corporation and that such transfers are entirely permissible under the law, if not even actually encouraged (also as further argued below.)

8

Again, the movants have utterly failed to prove with any evidence, let alone "clear and convincing" or even a "preponderance of" evidence, that there is cause for a trustee to be appointed or that it would be in the best interest of the estate.  On the contrary, appointment of a trustee would create unnecessary and substantial costs for the estate, prevent the estate from pursuing its valuable inverse condemnation claim against the NJDEP and hinder its potential operations or even the sale of its asset(s) necessary to pay back other creditors.

Notably both motions fail to identify any creditor who has been defrauded by Debtors' supposed mismanagement of SEP.  And the only reason there are creditors at all is because of the NJDEP's wrongful seizure of SEP's one asset.

**B.**      **Mrs. Bernardi Is Permitted To Transfer Funds From SEP's Account To Any Account.**

In New Jersey, a limited liability company is not subject to the same laws as a corporation regarding its finances and is not required to follow "corporate formalities."  A limited liability is not a corporation.  Under New Jersey's Uniform Limited Liability Company Act (the "ULLCA"), "a limited liability company has. . . .**the power to do all things necessary or _convenient_ to carry on its activities."**  (N.J.S.A. 42:2C-5.) (Emphasis added.) In fact, the ULLCA specifically permits a company's member(s) to *eliminate* any requirement that the member account to the limited liability company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the company's business, from a use by the member of the company's property, or from the appropriation of a limited liability company opportunity. (N.J.S.A. 42:2C-11d(1)(a).)

In its papers, the NJDEP repeatedly accuses the Bernardis of co-mingling corporate assets by transferring money from SEP's accounts to other accounts.  However, such conduct (which is only alleged and not proven) is perfectly permissible under the law anyway.  Indeed it is one of the chief reasons entrepreneurs elect to establish a business as a limited liability company rather than a corporation; that is to allow for the free transfer of funds from the business entity to their

own personal accounts.  (Again, notably there is no specific allegation that the Bernardis did so

to avoid creditors.  That is because any creditors who have yet to be paid exist as creditors only

because the NJDEP seized SEP's one asset and the Bernardis' only income source.)

Consequently, any argument that the Bernardis improperly co-mingled funds is unavailing.

**C.**     **SEP Is Not, And Was Never, Required To Deposit Any Of Its Revenues Into An Escrow Account.**

The NJDEP has alleged that SEP was required to deposit its revenues from tipping fees

into an escrow account pursuant to an Administrative Consent Order ("ACO").  The NJDEP claims

that because this was not done, SEP was mismanaged.  However, the escrow requirement imposed

on Debtors by the NJDEP is *ultra vires* and therefore unenforceable against them.  The ACO relied

upon by the NJDEP is illegal and unenforceable and therefore, cannot operate as a basis for a "fraud"

or "mismanagement" claim against Debtors.

In 1982, the NJDEP, acting pursuant to its statutory authority under the Solid Waste

Management Act, N.J.S.A.13:1E-1 et seq., adopted regulations for the proper closure of all

sanitary landfills. The landfill closure regulations were codified under New Jersey

Administrative Code Title 7, Chapter 26, Section 2A.9 (N.J.A.C. 7:26-2A.9) entitled "Closure

and post-closure care of sanitary landfills". However, **N.J.A.C. 7:26-2A.9 is not applicable to**

**SEP's Property and/or the Fenimore Landfill** because, pursuant to the express language of

Section 9(a), this Section only applies to landfills "operating on or after January 1, 1982". The

Fenimore Landfill ceased operating in 1977 pursuant to an Order of Defendant NJDEP. The

Landfill is not and has never been "operating on or after January 1, 1982". More specifically,

N.J.A.C. 7:26-2A.9 expressly establishes "requirements concerning establishment and use of the

escrow accounts required pursuant to the Sanitary Landfill Facility Closure and Contingency

Fund Act, N.J.S.A. 13:1E-100 et seq., and the Solid Waste Management Act, N.J.S.A. 13:1E-1 et

seq." **only** for sanitary landfills "operating on or *after* January 1, 1982." (Emphasis added.)

Therefore, it is beyond dispute that there is no rule, regulation or statute which requires a

pre-1982 landfill to establish and/or fund an escrow account or to otherwise comply with any

financial requirements.

Accordingly, the primary basis for the NJDEP's Motion to Appoint a Trustee, i.e.

SEP's failure to comply with an illegitimate ACO, is unlawful. Such an escrow and/or financial

reporting is not permitted by the Administrative Code section relied upon by the NJDEP. Again, the

NJDEP cannot be permitted to use SEP's failure to comply with an illegal requirement as a basis for

asserting SEP has been mismanaged.

The Debtors' position on this point is supported by the 1989 New Jersey Supreme Court

case Vi-Concrete Co. v. State, DEP, 115 N.J.1 (1989). In Vi-Concrete, the NJDEP ordered the

owner of "closed sanitary landfill sites" to bear the cost of installing and maintaining monitoring

wells on the sites. Although Vi-Concrete primarily involved issues not present in the case *sub*

*judice,* the Court in Vi-Concrete noted on page 6 that the installation of monitoring wells did not

become a requirement until the adoption of N.J.A.C. 7:26-2A.9 in 1987 and that the requirement

applied "only to landfills in operation on or after January 1, 1982." (*Vi-Concrete*, 115 N.J. 1 at 6.)

Consequently, it is impermissible to require a pre-1982 landfill owner to comply with the financial

requirements of N.J.A.C. 7:26- 2A.9, and **based upon the Supreme Court's holding in Vi-**

**Concrete, the NJDEP is prohibited from ordering SEP to escrow any funds or to submit any**

**financial information and/or reports.**

Nor was the NJDEP permitted to pursue SEP's "consent" to comply with *ultra vires* terms

by way of a "Consent Order."  There is no statutory and/or rule-based authority for the NJDEP to

compel a party to execute an Administrative Consent Order containing terms and conditions

which conflict with established law. The New Jersey Appellate Division has recognized this.

"The abstract right of DEP to compel execution of such a 'consent' administrative order has not

11

been condoned to date by any court. Indeed, a coercive order by definition cannot be a consent order." (State, DEP v. Mobil Oil Corp., 246 N.J. Super. 331, 336 (App. Div. 1991).) In State, DEP v. Mobil, the Court emphatically stated that nothing in the New Jersey Spill Act "or its inferential penumbras" gives the NJDEP the "absolute power to impose an ACO with any terms it sees fit upon an alleged polluter, reserving *no* rights to the citizen to raise the ACO's fundamental fairness in a later enforcement proceeding." *Id.,* 336-37. The Court further stated that under appropriate circumstances, parties have the right to demonstrate that terms of an ACO required by the DEP are unreasonable.(*Ibid.)*

The New Jersey Appellate Division has held that governmental agencies cannot "do by agreement what can only be done by following the appropriate statutory procedure."(Suski v. Mayor & Commissioners of Borough of Beach Haven, 132 N.J. Super. 158, 164 (App. Div. 1975), quoting Midtown Properties, Inc. v. Madison Twp., 68 N.J. Super. 197 (Law Div. 1961).) A contract which is illegal and void incorporated in a consent judgment "will not breathe legal life into it." (*Ibid.* In Edelstein v. City of Asbury Park, 51 N.J. Super. 368 (App. Div. 1958)), the Court stated as follows:

> "The mere fact that a judgment was entered by consent does not preclude appropriate inquiry into the validity of the municipal authorization therefor. Such underlying action is subject to the same attack and review as any other governmental act, and the judgment is only as good as the authorizing action. To hold otherwise would be to insulate municipal acts from review, in derogation of the public interest, where they could be contrived to take the form of a judgment by consent. (Edelstein at 389.)

There is no question that the NJDEP has acted beyond heavy-handedly with the Debtors

and will eventually be called to account for doing so.  This latest application and its obvious

pressure/influence on the USDOJ to make the identical simultaneous application is evidence of

NJDEP's continued efforts to harass the Debtors and effectuate an unconstitutional land grab. As

the New Jersey State Appellate Division and a prior denial of an application in state court for a

receiver also illustrate.  This should not be countenanced.


## IV.

### <u>CONCLUSION</u>

Based on the foregoing, it is respectfully requested that the NJDEP's and the USDOJ's

Motions to Appoint a Trustee be denied in their entirety.



Respectfully submitted,


The Law Offices of Batya G. Wernick
Attorneys for Debtors


_____/s/_____
Batya G. Wernick, Esq.