UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

CHRISTOPHER S. PORRINO
ATTORNEY GENERAL OF NEW JERSEY
25 Market Street, PO Box 093
Trenton, NJ 08625-0093
Attorney for New Jersey Department of Environmental Protection

By:  Kevin J. Fleming, Deputy Attorney General
     (609) 633-8713
     kevin.fleming@dol.lps.state.nj.us

     Robert J. Kinney, Deputy Attorney General
     (609)292-1557
     Robert.kinney@lps.state.nj.us

| | |
|---|---|
| In Re:<br><br>Strategic Environmental Partners, LLC, Richard W. Bernardi and Marilyn I. Bernardi<br><br>Debtors. | Case No.: 16-22151-CMG<br><br>Chapter: 11<br><br>Judge: Christine M. Gravelle |

**REPLY BRIEF OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION TO DEBTOR STRATEGIC ENVIRONMENTAL PARTNER'S MEMORANDUM OF LAW IN OPPOSITION TO THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

**I.  PRELIMINARY STATEMENT**

Debtor's Memorandum of Law in Opposition to the New Jersey Department of Environmental Protection's (NJDEP) Motion for Appointment of Chapter 11 Trustee in regard to petition 16-22151 (Strategic Environmental Partners, LLC or "SEP") is so replete with misstatements of fact and law as applied to the Debtor and its business operation as to border on the frivolous.  Debtor's statement that appointment of a Chapter 11 trustee would "hinder productive re-organization of both bankruptcy estates" leaves one almost speechless given that Debtor's petition filed with this court lists <u>zero</u> assets as to Debtor, making one wonder what, if anything, there is to reorganize.  Counsel's self-serving declaration of "inadvertent error" in the initial filings – which to date remain uncorrected – likewise calls into serious question the legitimacy of Debtor's filing and "reorganization."

Debtor's arguments in opposition should be rejected. A Chapter 11 Trustee should be appointed (or Chapter 7 conversion entered) as requested by the NJDEP and the United States.

## II. COUNTER-STATEMENT OF FACTS

Except as noted below, NJDEP relies on its Statement of Facts as recited in its Brief in Support of Motion to Appoint a Chapter 11 Trustee ("NJDEP Motion").

In May, 2012, NJDEP noticed termination of the Administrative Consent Order/Closure Plan permits ("ACO/CP") issued to SEP because of SEP's failure to place tipping fees into escrow and account for fee revenues, as required by the ACO/CP. Litigation in both the New Jersey Office of Administrative Law and in Superior Court followed, with the latter court denying requests for injunctions by all parties, which effectively left the status quo in place. In November, 2012, the Fenimore landfill began emitting hydrogen sulfide gas into the surrounding area, generating thousands of complaints from residents living nearby. NJDEP issued ten (10) separate administrative penalty orders to SEP and its principals regarding the odor pollution between December 2012 and July 2013. An administrative hearing as to the odor violations eventually resulted in a Final Order issued by the NJDEP in February 2016, finding SEP, Richard Bernardi and Marilyn Bernardi jointly and severally liable for $883,000 in civil administrative penalties (this includes $93,000 in penalties under the Solid Waste Management Act). Supplemental Certification of Robert Kinney ("Kinney Cert. II"), Exhibit A.

On June 26, 2013, in response to the unabated emissions of hydrogen sulfide gas from the Fenimore landfill, DEP Commissioner Bob Martin issued an emergency order authorizing NJDEP to enter the landfill and take corrective action to abate the odor pollution. Kinney Cert. II, Exhibit B. The Appellate Division of the New Jersey Superior Court vacated the Emergency Order under the authority of N.J.S.A. 13:1E-125.1 et seq., and remanded the matter to Superior Court for a fact-finding plenary hearing to determine if the Commissioner's action could have been authorized by N.J.S.A. 13:1E-9.5. See Strategic Environmental Partners, LLC v. New Jersey Department of Env. Prot., 438 N.J. Super. 125, 143 (App. Div. 2014) ("Because the

Legacy Landfill Law provides no mechanism for a hearing and there is no record on which we can conduct a meaningful review, we vacate the emergency order <u>and</u> remand to the Law Division for discovery, experts' reports, and a plenary hearing on the limited issue of whether the hydrogen sulfide emissions presented an imminent threat to the environment on June 26, 2013. [citations omitted] If the Commissioner establishes a prima facie case, SEP must demonstrate, by clear and convincing evidence, that the hydrogen sulfide emissions did not present an imminent threat to the environment. <u>N.J.S.A.</u> 13:1E-9-5(c).") (emphasis added).

Debtor's statement that it was not obligated to place tipping fees into escrow is false. The plain language of the ACO/CP makes clear Debtor's obligation to deposit and account for tipping fee revenues, and Debtor's creation of an escrow account is an acknowledgment of that requirement. See Certification of Robert Kinney, filed with NJDEP's Motion ("Kinney Cert. I"), Exhibit 1, ¶ 13, 24; Exhibit 4.  Further, Debtor never challenged the requirement before the Appellate Division, and its arguments have been rejected by the New Jersey Superior Court. Kinney Cert. II, Exhibit C.

Debtor's argument that NJDEP was "forum shopping" is also false; NJDEP filed action in Monmouth County to collect on the civil penalty judgment entered via the Final Order on February 17, 2016 (Kinney Cert. II, Exhibit A), and to have a receiver appointed over Debtor's assets because of Debtors' demonstrable mismanagement of tipping fee revenues and its accounts.  Monmouth County is where the Bernardi Debtor's real property resides (as noted above, SEP and the Bernardi debtors are jointly and severally liable for the civil penalties), and thus venue there was proper and logical.  Debtor's counsel notes in her certification accompanying Debtor's opposition that Debtor's Chapter 11 petition was filed the day before argument on NJDEP's motion.  The paucity of information filed in support of  Debtor's filing, to date, suggests that the present petition was filed merely to forestall an order of the Monmouth Court that Debtors' pay the penalties assessed and that a receiver be appointed.  The present lack

of additional information in support of Debtor's petition underscores the illegitimacy of Debtor's petition, and urges strongly for appointment of a Trustee.

### III. LEGAL ARGUMENT

A.  **NJDEP'S Supporting Evidence in its Motion Meets the Clear and Convincing Standard Required for Appointment of a Trustee in This Circuit.**

NJDEP will not repeat its arguments from its initial brief, except to emphasize that the bank account evidence submitted to the Court in support of NJDEP's motion is clear and convincing proof of mismanagement and gross self-dealing by Marilyn Bernardi in her management of SEP's accounts, and argues strongly for the appointment of a Trustee. Debtor does not deny that Mrs. Bernardi moved corporate monies into and out of personal accounts. See Debtor's Memorandum of Law at 9 – 10.  Nor does Debtor attempt to explain how transfers of corporate monies to irrevocable trusts and other trust accounts for the Bernardi's children in 2012 and 2013 (totaling $1,004,000 in SEP assets) while SEP owed vendors such as Matrix New World Engineering, Inc. over $1.3 million in the same period of time (Kinney Cert. II, Exhibit D) does not constitute mismanagement or gross self-dealing. NJDEP will let the unrefuted evidence it submitted speak for itself.  NJDEP has more than met its burden of demonstrating, by clear and convincing evidence, the need for a Chapter 11 Trustee under either 11 U.S.C. § 1104(a)(1) or (a)(2). In re Sharon Steel Corp., 871 F. 2d 1217, 1225 – 1226 (3d Cir. 1989).

B.  **Marilyn Bernardi Abused her Authority as Sole Member of SEP, and the New Jersey Uniform Limited Liability Company Act Does Not Authorize Her Mismanagement and Self-Dealing.**

"A limited liability company is an entity distinct from its members."  N.J.S.A. 42:2C-4(a).  It goes without saying that an LLC is not, therefore, an alter-ego of its member, such that the member may use the assets and property of the LLC as wholly personal property.  Debtor's citation to N.J.S.A. 42:2C-5 (Powers) as justification for Mrs. Bernardi's use of SEP assets as wholly personal property misconstrues its purpose.  N.J.S.A. 42:2C-5 states that the "things necessary and convenient" referred to by Debtor are for the purpose of the LLC's activities, not the member's, who is a distinct entity from the LLC.  Inherent in Section 5 is the understanding

that the LLC must benefit from the "things necessary and convenient" done on its behalf. Transfers of millions of dollars in SEP deposits to trust accounts for the member's children, for example, can hardly be said to benefit the LLC or be "necessary and convenient to carry on its activities."

Debtor's citation to N.J.S.A. 42:2C-11(d)(1)(a) is similarly misplaced. N.J.S.A. 42:2C-11 discusses the scope, function and limitations of LLC operating agreements. To NJDEP's knowledge and belief, there is no evidence of an "operating agreement" for Debtor SEP, and Debtor has not provided such a document to the court. Further, N.J.S.A. 42:2C-11(d)(1)(a) provides that an operating agreement may restrict or eliminate certain duties "[i]f not manifestly unreasonable." Additionally, N.J.S.A. 42:2C-11(c) provides that an operating agreement may not "eliminate the duty of loyalty, the duty of care, or any other fiduciary duty" except as provided by N.J.S.A. 42:2C-11(d) through (g). N.J.S.A. 42:2C-11(c) clearly envisions an express – and not implied – agreement to restrict or eliminate certain duties under N.J.S.A. 42:2C-11(d) through (g), given that such exceptions implicate the duties expressed in N.J.S.A. 42:2C-11(c). Fundamentally, however, the statute requires:

> **a.** A member of a member-managed limited liability company owes to the company and, subject to subsection b. of section 67 of this act, the other members, the duties of loyalty and care stated in subsections b. and c. of this section.
> **b.** The fiduciary duty of loyalty of a member in a member-managed limited liability company includes the duties:
>   **(1)** to account to the company and to hold as trustee for it any property, profit, or benefit derived by the member:
>     **(a)** in the conduct or winding up of the company's activities;
>     **(b)** from a use by the member of the company's property; or
>     **(c)** from the appropriation of a company opportunity;
>   **(2)** to refrain from dealing with the company in the conduct or winding up of the company's activities as or on behalf of a person having an interest adverse to the company; and
>   **(3)** to refrain from competing with the company in the conduct of the company's activities before the dissolution of the company.
> **c.** The duty of care of a member of a member-managed limited liability company in the conduct and winding up of the company's activities is to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

N.J.S.A. 42:2C-39 [Standards of conduct for members and managers]

Marilyn Bernardi's conduct, as demonstrated by the NJDEP's evidence submitted with its motion, demonstrates a violation of her fiduciary duties of loyalty and care as SEP's sole member, and instead evidences her gross self-dealing with the company's property.  Absent an operating agreement waiving such obligations – of which Debtor supplies no evidence – Debtor's argument that Mrs. Bernardi was permitted to co-mingle and transfer funds from SEP's accounts to "any" account is without support.

C. **Debtor's *Ultra Vires* Challenge to Debtor's Requirement to Deposit Tipping Fee Revenues to Escrow Has Been Rejected by the Superior Court of New Jersey, and This Court Lacks Jurisdiction to Hear It.**

The ACO/CP entered into by SEP constituted a final order of the NJDEP.  The ACO's terms memorialized SEP's agreement to the provisions of N.J.A.C. 7:26-2A.9 for the purposes of SEP's redevelopment of the landfill, as well as SEP's agreement to the escrow provisions. Kinney Cert., Exhibit 1, p.2, ¶ 8; p.3, ¶ 13. As noted above, SEP established the escrow account for this purpose, but thereafter failed to deposit tipping fee revenues to the account.

During a proceeding before the Superior Court of New Jersey, Debtor made the same arguments it now makes here.  The Superior Court rejected those arguments after briefing and oral argument. See Kinney Cert. II, Exhibit C.  In particular, the Superior Court held that the ACO/CP constituted a final order of the NJDEP that could only be challenged in the Appellate Division of the Superior Court. Id., p. 3; see also New Jersey Court Rule 2:2-3(a)(2).  Debtor failed to do so.  Thus, the Superior Court lacked jurisdiction to hear the challenge.  Debtor may not use this proceeding to open a new challenge to the ACO/CP because this Court similarly lacks jurisdiction to hear it. Cf. In re FCC, 217 F.3d 125, 139-140 (2d Cir. 2000), cert. denied, 531 U.S. 1029 (2000) (bankruptcy court lacked jurisdiction to hear collateral challenge to FCC rule; such challenge was the exclusive jurisdiction of the U.S. Court of Appeals); FCC. v. NextWave Personal Communications, 200 F.3d 43, 54 (2d Cir. 1999), cert. denied, 531 U.S. 924 (2000) (jurisdiction over claims brought against the FCC in its regulatory capacity lie exclusively in the federal courts of appeals; bankruptcy and district courts lack jurisdiction to decide the

question of whether NextWave satisfied the regulatory conditions placed by the FCC upon its retention of the licenses.).

## CONCLUSION

For the reasons articulated herein and in the NJDEP's Memorandum of Law in Support of Appointment of a Chapter 11 Trustee, Debtor's arguments in opposition should be rejected, and the Motion of the NJDEP should be granted.

Respectfully Submitted,

CHRISTOPHER S. PORRINO
ATTORNEY GENERAL OF NEW JERSEY
Attorney for New Jersey DEP


BY: /s/ *Kevin J. Fleming*
Kevin J. Fleming
Deputy Attorney General

Robert J. Kinney
Deputy Attorney General, On the Brief